UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UMAR ALLI,

                Plaintiff,

        v.

THE CITY OF NEW YORK, et al.,

                Defendants.

**ORDER**

21 Civ. 4767 (PGG) (SN)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Umar Alli brings this action against the City of New York and numerous New York City Department of Correction officials. (Cmplt. (Dkt. No. 2) at 1)[1] This Court construes the Complaint's remaining claims as asserting constitutional violations under 42 U.S.C § 1983 for deliberate indifference to his conditions of confinement, excessive force, and failure to provide religious meal services.[2] (See id. at ¶ 66) All Defendants, except for Defendant Edmund, have filed a partial motion to dismiss.[3] (Dkt. No. 44) For the reasons stated below, the Moving Defendants' partial motion to dismiss will be granted.

---

[1] The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing ("ECF") system.

[2] On June 17, 2021, this Court dismissed Plaintiff's claims relating to policies governing his confinement at the Manhattan Detention Complex's 9-South Unit as duplicative of his claims pending in another action in this District, Alli v. Sylla, No. 21 Civ. 4866 (ALC) ("the Sylla Action"). (Dkt. No. 7; see Cmplt. (Dkt. No. 2) ¶¶ 1-46)

[3] Defendants City of New York ("the City"), Simms, Davis, Sterling, Ricketts, Moodie, Nihal, Mariano, Littles, Robinson, Levy, Stukes, Alleyne, Carter, Jennings, Harris, Brown, Renee and Ruiz filed the motion. (See Dkt. No. 44) The City later identified Captains Mack, Jones, and Henry as the "John Doe" officers who allegedly "toured Housing Area 7A and 9B while Plaintiff was on deadlock from April 15, 2021 until May 1, 2021." (Mar. 29, 2022 Order (Dkt. No. 60) at 1 (quoting Cmplt. (Dkt. No. 2) at 1)) After Judge Netburn substituted those individuals as defendants for the "John Does" in the case caption (see id.), Defendants Mack, Jones, and Henry

## BACKGROUND

Plaintiff is a former pretrial detainee at the George R. Vierno Center ("GRVC") on Rikers Island.[4] (Cmplt. (Dkt. No. 2) ¶¶ 47, 52-53)  On April 15, 2021, Plaintiff was transferred to a "rival gang house" at GRVC.  (Id. ¶¶ 52-53)  The Complaint alleges that Defendant Jennings authorized the transfer "out of retaliation," despite knowing that "[Plaintiff] would be jumped." (Id. ¶ 53)  Upon entering the unit, several inmates attempted to "jump and slash" Plaintiff's facial area.  Defendant Edmund then sprayed Plaintiff in the face with chemical agents several times, and allowed several of the inmates to steal $350 worth of Plaintiff's property.  (Id. ¶¶ 54-55)  Later that evening, members of the "Probe team" and several officers jumped and choked Plaintiff, and "delivered closed fist blows to his facial area."  One officer proceeded to cut the left side of Plaintiff's facial area.  The Complaint alleges that this "use of excessive force took place for approximately ten minutes." (Id. ¶ 58)  Shortly thereafter, "the Probe team officers" allegedly sexually assaulted Plaintiff and "tried to cut him again."  (Id. ¶ 59)

Plaintiff further alleges that, while in custody at GRVC, he suffered from poor conditions of confinement and other constitutional violations.  For example, between April 15, 2021 and May 1, 2021, Plaintiff was not allowed to "lock out" of his cell, participate in recreational activities, or use the phone.  Plaintiff also did not receive adequate religious meals.  Between April 25, 2021 and May 1, 2021 – during Ramadan – his "religious diet was not followed," resulting in a violation of his First Amendment rights.  (Id. ¶¶ 61-64)  The Complaint

---

joined the pending motion to dismiss.  (See Dkt. No. 72)  Defendant Edmund, who is represented by separate counsel, is the only Defendant who has not joined the motion.

[4] Plaintiff is now incarcerated at Attica Correctional Facility. (Dkt. No. 79)

further alleges that Plaintiff was held in a cell with a documented sewage problem, thus violating Plaintiff's Eighth Amendment rights. (Id. ¶ 64)

On the night of April 23, 2021, Plaintiff "hear[d] voices telling him to start fires and or kill himself." After he started a fire, Defendant Brown "put out the fire several times," but did not "follow fire safety protocol and forced [Plaintiff] to endure smoke inhalation all night." At 11:00 a.m. the next morning, "another fire took place," and Plaintiff suffered from further smoke inhalation for two hours. (Id. ¶¶ 62-63) Although medical assistance "was offered," "the John Doe Doctor falsified medical records lying about [Plaintiff's] condition." (Id. ¶¶ 63) On May 1, 2021, Plaintiff started another fire after being left in "rival gang houses," and he suffered further smoke inhalation. A correction officer "extinguish[ed] the fire multiple times and the fire safety officer respond[ed] to the area." (Id.)

Plaintiff states that he called 311 and filed grievances in connection with the above claims, "yet no response was received." (Id. ¶ 65) Alli does not state when he called 311 or filed his grievances, however. Plaintiff nonetheless alleges that he "exhausted his administrative remedies" by calling 311 and not receiving a response. (Id.)

The Complaint is dated May 25, 2021, and was docketed on May 27, 2021. (See id. at 23) Later that day, this Court referred the case to Magistrate Judge Sarah Netburn for general pretrial supervision. (Dkt. No. 6)

Although the Complaint invokes 18 U.S.C. §§ 241 and 242 and 42 U.S.C. §§ 1985 and 1986 in addition to 42 U.S.C. § 1983, the Court construes the Complaint as asserting claims under Section 1983 for excessive force, deliberate indifference to Plaintiff's conditions of

confinement, and failure to provide adequate religious meal services.[5]  The Court further construes the Complaint as seeking $3 million for pain and suffering.[6]  (Id. ¶ 68)

On January 27, 2022, the Moving Defendants – except for Defendants Mack, Jones, and Henry – moved to dismiss the Complaint's "conditions of confinement and deliberate indifference claims," arguing that Plaintiff has not (1) exhausted his administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997(e) (the "PLRA"); (2) demonstrated that he was excused from exhausting his administrative remedies; (3) shown that

---

[5]  Although the Moving Defendants only address – and seek dismissal of – Plaintiff's Section 1983 claims, 28 U.S.C. § 1915A directs district courts to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and to "dismiss . . . [any] portion of the complaint . . . [that] . . . fails to state a claim." 28 U.S.C. § 1915A.

18 U.S.C. §§ 241 and 242 – cited by Plaintiff (see Cmplt. (Dkt. No. 2) at 1, ¶ 48) – are criminal statutes and provide no basis for civil claims.  Accordingly, to the extent Plaintiff seeks relief under those statutes, his claims will be dismissed.

Plaintiff also invokes 42 U.S.C. §§ 1985 and 1986.  (See id.)  In order to state a claim under 42 U.S.C. § 1985, however, Plaintiff must plead facts demonstrating, inter alia, that he is a member of a protected class and that Defendants' conduct was motivated by class-based animus.  Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) ("[T]he [§ 1985] conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" (quoting Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).  Here, the Complaint does not allege that Defendants' actions were motivated by Plaintiff's race or any other protected characteristic.  Moreover, inmates such as Plaintiff do not constitute a protected class for purposes of Section 1985.  See Lopes v. Westchester Cty., No. 18-CV-8205 (KMK), 2020 WL 7029002, at *9 (S.D.N.Y. Nov. 30, 2020) ("'[I]nmates are not, by virtue of being inmates, members of a protected class.'" (quoting Randolph v. DOCCS, No. 17-CV-700 (NSR), 2018 WL 4374006, at *5 (S.D.N.Y. Sept. 13, 2018)).  In sum, because the Complaint does not plead facts demonstrating that Plaintiff is a member of a protected class, Plaintiff's Section 1985 claim will be dismissed.

As for Plaintiff's claim under 42 U.S.C. § 1986, the Second Circuit has ruled that "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  Given that the Complaint does not state a claim under Section 1985, Plaintiff's claim under 42 U.S.C. § 1986 will likewise be dismissed.

[6]  Although the Complaint includes a general request for "declaratory and injunctive relief" (id. ¶ 47), Plaintiff does not specify the declaratory and injunctive relief that he seeks.

Defendants were the proximate cause of his alleged injuries from the fires; and (4) sufficiently alleged that certain Defendants were personally involved in any of the alleged constitutional violations.[7]  (Def. Br. (Dkt. No. 46) at 7-8)  Plaintiff has not opposed the motion.[8]

## DISCUSSION

### I.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed.

---

[7] The Moving Defendants do not seek dismissal of Plaintiff's claims "regarding force used against him by [Department of Correction] officers, but intend to move to dismiss [those] claims at the summary judgment stage." (Def. Br. (Dkt. No. 46) at 7 n.1)

[8] On May 23, 2022, Judge Netburn deemed the motion "fully briefed" after granting Plaintiff several extensions to submit any opposition. (Dkt. No. 68; see also Dkt. Nos. 41, 51, 63)

5

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering [a] motion[] to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly. . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))).  "[A]lthough pro se filings are read liberally and must be interpreted to raise the strongest arguments that they suggest, a pro se complaint must still plead sufficient facts to state a claim to relief that is plausible on its face." Wilder v. United States Dept. of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (internal quotation marks and citations omitted).  Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'"  Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." (internal quotation marks and citation omitted)).

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Moving Defendants contend that Plaintiff's conditions of confinement and deliberate indifference claims should be dismissed because he has not exhausted his administrative remedies.  (Def. Br. (Dkt. No. 46) at 11-15)

### A.     Applicable Law

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about

6

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Supreme Court has held that the PLRA requires "'proper exhaustion,'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)), which means that "'prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.'" Id. (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). Accordingly, the exhaustion inquiry requires courts to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

Here, Plaintiff's grievance is governed by the Inmate Grievance and Request Program ("IGRP"), "a four-step administrative review and appeals system for prisoner grievances within the New York City Department of Correction." Groenow v. Williams, No. 13 Civ. 3961 (PAC) (JLC), 2014 WL 941276, at *2 (S.D.N.Y. Mar. 11, 2014). The IGRP requires an inmate to

> file a complaint with the IGRP for informal resolution . . . ; (2) if unsatisfied with the disposition or a disposition has not been reached in a timely manner, request a hearing with the Inmate Grievance Resolution Committee ("IGRC") within five days of the disposition; (3) appeal to the commanding officer of the facility, who must render a decision within five working days; and (4) if the inmate is still unsatisfied with the disposition, appeal to the DOC Central Office Review Committee ("CORC"), which must issue a recommendation within 15 working days.

7

Id. at *2 n.1 (citing N.Y.C. Dep't of Corr., Directive 3376 (effective Sept. 12, 2012)).⁹  "The inmate must take each of the four steps to exhaust the administrative grievance process."¹⁰ Perez v. City of New York, No. 14 Civ. 7502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015).

Because a "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement, . . . 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (quoting Jones, 549 U.S. at 216).  Nonetheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."  Id.

> There are three steps in the inquiry a court must follow to determine whether to grant a motion to dismiss for failure to exhaust administrative remedies.  First, a court must ask "whether administrative remedies were in fact available to the prisoner."  Second, the court must determine whether defendants waived the defense by failing to raise or preserve it, or whether they should otherwise be estopped from asserting the defense because they prevented or inhibited the plaintiff from exhausting his remedies.  Finally, if necessary, the court "should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

---

⁹  It is a "common practice in this District" to take "judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim." Leneau v. City of New York, No. 16 Civ. 893 (RA), 2018 WL 583120, at *2 n.3 (S.D.N.Y. Jan. 26, 2018).

¹⁰  "[W]here administrative remedies are not 'available' [to an inmate,] failure to comply with the PLRA exhaustion requirement may be excused." Barker v. Smith, No. 16 Civ. 76 (NSR), 2017 WL 3701495, at *4 n.3 (S.D.N.Y. Aug. 25, 2017) (citation omitted).  As discussed below, Plaintiff does not allege that the IGRP was unavailable to him at GRVC, and there is no basis for this Court to make such a finding.  See Massey v. City of New York, No. 20 Civ. 5665 (GBD) (DF), 2021 WL 4943564, at *10 (S.D.N.Y. Aug. 30, 2021), report and recommendation adopted, 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021) ("[T]he mere fact that an inmate may not have received responses to prior grievances is insufficient to excuse exhaustion.").

Antrobus v. Warden of GRVC, No. 11 Civ. 5128 (JMF), 2012 WL 1900542, at *2 (S.D.N.Y. May 25, 2012) (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)) (internal citations omitted).

### B. Analysis

As an initial matter, Plaintiff's claims all relate to "prison life, whether they involve general circumstances or particular episodes," and therefore are subject to the PLRA's exhaustion requirement. Porter, 534 U.S. at 532.

Defendants contend that it is clear from the face of the Complaint that Plaintiff has not exhausted his administrative remedies. (Def. Br. (Dkt. No. 46) at 10)

The Complaint asserts that Alli "filed grievances and called 311 in response to . . . [his] claims yet no response was received." Alli contends that he thereby "exhausted his administrative remedies." (Cmplt. (Dkt. No. 2) ¶ 65) However, Alli's allegations demonstrate that he did not exhaust the steps required by the IGRP. Plaintiff "must exhaust all steps before he may pursue litigation in federal court, including filing an administrative appeal, even when he does not receive a response to his initial grievance." Martinez v. Schriro, No. 14 Civ. 3965 (KMW), 2017 WL 87049, at *2 (S.D.N.Y. Jan. 9, 2017) (citing Tyler v. Argo, No. 14 Civ. 2049 (CM), 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014) ("Plaintiff's failure to take any further steps in the face of administrative silence constitutes a failure to exhaust his administrative remedies.")). The lack of a response to Plaintiff's 311 call does not excuse him from continuing with the next steps of the IGRP process and exhausting his administrative remedies.

In connection with his claims regarding his detention at MDC's 9-South Unit, Plaintiff alleges that

> [D]efendants . . . had a custom of refusing to file submitted grievances and or returning said grievances as non-grievances staff complaint. If any grievances

9

> were answered they were of no importance and only answered to stage procedure was being complied with.

(Cmplt. (Dkt. No. 2) ¶ 46) This paragraph of the Complaint duplicates allegations that Alli pled in his Sylla action, however. (Compare id. with Alli v. Sylla, No. 21 Civ. 4866 (ALC) (S.D.N.Y.), Cmplt. (Dkt. No. 2) ¶ 46) And this Court previously dismissed Plaintiff's claims set forth in Paragraphs One through Forty-Six of the Complaint "as duplicative of [Plaintiff's] claims in [the] Sylla [action]." (See June 16, 2021 Order (Dkt. No. 7) at 2) In any event, because this paragraph addresses Plaintiff's incarceration at MDC, there is no basis to apply those allegations to the prison staff and Plaintiff's detention at GRVC.

The Complaint thus shows that Plaintiff has neither exhausted his administrative remedies nor alleged any basis for this Court to find that such remedies were not available to him at GRVC.

Applying the second and third steps of the exhaustion inquiry, this Court finds that dismissal of Plaintiff's claims remains appropriate. The Moving Defendants did not waive the exhaustion defense, but rather properly raised it in their motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (See Def. Br. (Dkt. No. 46) at 11) Moreover, the Complaint does not suggest that the Moving Defendants interfered with Plaintiff's exhaustion of remedies at GRVC. "Finally, no special circumstances have been alleged, plausible or otherwise, that would justify [Plaintiff's] failure to comply with all steps of the IGRP." Antrobus, 2012 WL 1900542, at *3.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211. Accordingly,

Plaintiff's claims of deliberate indifference and failure to provide religious meal services will – as to the Moving Defendants[11] – be dismissed for failure to exhaust administrative remedies.

The Moving Defendants further argue that Defendants Brown, Alleyne, and Ruiz should be dismissed from this action because the Complaint's only factual allegations against them relate to Plaintiff's deliberate indifference claim.  (Def. Br. (Dkt. No. 46) at 15 n.5)  Plaintiff alleges that "Officers Ruiz and Allyiene [sic] . . . refuse[d] to move him [from a rival gang unit at GRVC] and [thus] continue[d] to place him in harms way."  (Cmplt. (Dkt. No. 2) ¶ 64)  Similarly, and as discussed above, the Complaint states that Officer Brown "forced [Plaintiff] to suffer smoke inhalation," despite putting out Plaintiff's fires several times on the night of April 23, 2021.  (Id. ¶ 62)  The Complaint does not otherwise plead allegations against Defendants Brown, Alleyne, and Ruiz.  Because Plaintiff's allegations against these Defendants relate solely to his dismissed deliberate indifference claim, Defendants Brown, Alleyne, and Ruiz will be dismissed from this action.

## III.    SUPERVISORY LIABILITY

Defendants further contend that Defendants Warden Renee, Deputy Warden Harris, and Chief Stukes should be dismissed from this action, as the Complaint "fails to allege how [they] were personally involved in violating [Plaintiff's] constitutional rights."  (Def. Br. (Dkt. No. 46) at 20)

### A.    Applicable Law

"'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"

---

[11]  Because (1) exhaustion is an affirmative defense under the PLRA, see Williams, 829 F.3d at 122, and (2) Defendant Edmund has not joined the pending motion to dismiss, this Court declines to dismiss Plaintiff's § 1983 claim as to him.

11

Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). To establish supervisory liability, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676). "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Id. at 620.

  **B.** **Analysis**

    Plaintiff does not allege any facts showing how Defendants Renee, Harris, and Stukes were personally involved in the events underlying his claims. Except for the caption, these Defendants are nowhere mentioned in the Complaint. (See Cmplt. (Dkt. No. 2) at 1) Because Plaintiff has not pled factual allegations showing that these Defendants violated his constitutional rights, his Section 1983 claims against Defendants Renee, Harris, and Stukes will be dismissed.

## CONCLUSION

    For the reasons stated above, the Moving Defendants' motion to dismiss the Complaint's claims for deliberate indifference and inadequate religious meal services is granted. To the extent the Complaint asserts claims under 18 U.S.C. §§ 241 and 242, and 42 U.S.C. §§ 1985 and 1986, those claims are dismissed as to all Defendants. The Clerk will terminate Alleyne, Ruiz, Brown, Renee, Stukes, and Harris as Defendants in this action.

    This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

    The Clerk of Court is directed to terminate the motion (Dkt. No. 46).

The Clerk of Court is further directed to mail a copy of this Order to pro se Plaintiff by certified mail.

Dated: New York, New York
September 27, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge